IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IFTIKHAR NAZIR,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED AIR LINES,<br><br>　　　　　Defendant.　　　　　　　　　／ | No. CV 09-01819 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

　　　　Plaintiff Iftikhar Nazir is a former employee of Defendant United Airlines. Plaintiff sued Defendant in state court, and Defendant's defense of those claims involved filings in both state and bankruptcy court. Plaintiff brought this suit in federal court based on Defendant's conduct in that post-termination litigation. Defendant has now brought both a motion to dismiss and a motion for sanctions against Plantiff's counsel. The Court hereby GRANTS the motion to dismiss and DENIES the motion for sanctions.

## BACKGROUND

　　　　Plaintiff Iftikhar Nazir, a Muslim of Pakistani descent, was employed by Defendant United Airlines, Inc. at the San Francisco International Airport for over 16 years. Cmplt. at ¶¶ 5-6. He was terminated in May 2005, and the following year sued Defendant in state court, alleging discrimination and harassment based on his religion, color, national origin, and ancestry. Cmplt. at ¶¶ 8, 13, 16. Plaintiff's pending suit against Defendant stems from

two actions Defendant took in the course of litigating Plaintiff's discrimination and harassment claims.

### 1. Defendant's Actions in Bankruptcy Court

The first took place in bankruptcy court. In 2002, Defendant had filed a voluntary petition for relief under Chapter 11, which gave rise to an automatic stay of all judicial actions or proceedings against Defendant. Mot.[1] at 3. The bankruptcy court confirmed Defendant's second amended plan of reorganization in 2006, in which all pre-confirmation claims against United were discharged. Id. In November 2007, in response to Plaintiff's state court litigation, Defendant filed a motion for contempt and sanctions against Plaintiff in bankruptcy court. Cmplt. at ¶ 20. Plaintiff alleges that Defendant "knew its motion for contempt was meritless." Id. at ¶ 23.

The bankruptcy court divided Plaintiff's state court allegations into pre-petition claims and post-petition claims. RJN Ex. 14.[2] It found that Plaintiff could not recover damages in cash for his pre-petition claims but could only be paid through Defendant's Plan of Reorganization; it also found that Plaintiff's right to pursue his post-petition claims was preserved by 28 U.S.C. § 959(a) and had not been discharged by 11 U.S.C. § 1141. Id. It did not award sanctions against Plaintiff, stating that it "decline[d] to impose any civil liability on Nazir or his California counsel for the violation of the discharge injunction that took place with respect to the Prepetition Claims." Id.

Defendant then moved for reconsideration of the bankruptcy court's order. Cmplt. at ¶ 25. The bankruptcy court declined to hold Plaintiff in contempt, but amended its previous ruling by holding that Plaintiff was prohibited from seeking or obtaining any recovery for his pre-petition claims. RJN Ex. 16. It explained: "any claims of Nazir arising from prepetition harassment by United were discharged under § 1141(d), and Nazir cannot pursue collection

---

[1] "Mot." refers to Defendant's Motion to Dismiss.

[2] "RJN" refers to Defendant's Request for Judicial Notice. The Court takes judicial notice of Exhibits 1, 2, 3, 14, 16, and 18.

2

1 of these claims without violating the discharge injunction." Id.[3] The court found that
2 Plaintiff was permitted to pursue his post-petition claims because § 959(a) permitted him to
3 do so and he had received insufficient notice of United's Plan for Reorganization. Id.

4 Defendant then appealed to the Northern District of Illinois the portion of that ruling
5 dealing with Plaintiff's post-petition claims. Cmplt. at ¶ 27. The district court reversed the
6 bankruptcy court's interpretation of § 1141(d)(1) ("insofar as the bankruptcy court ruled that
7 Nazir's post-petition, pre-confirmation employment discrimination claims were not barred"),
8 but otherwise affirmed, holding that Plaintiff had not received sufficient notice of
9 Defendant's Plan. RJN Ex. 18. It remanded for determination of the impact of its ruling on
10 the contempt motion. Id. Plaintiff alleges that Defendant knew both the motion for
11 reconsideration and the appeal to district court were meritless. Cmplt. at ¶ 29.

   2.   Defendant's Actions in State Court

13 The second action by Defendant that is the subject of this suit took place in state court.
14 In February 2008, the state court granted summary judgment for Defendant on all of
15 Plaintiff's claims. RJN Ex. 2.[4] The court subsequently awarded Defendant $79,117.10 in
16 costs. RJN Ex. 3. About $28,096.51 of the costs were attributable to expert witness fees,
17 and about $51,020.59 were attributable to ordinary costs. Cmplt. at ¶ 32. Plaintiff filed a
18 Notice of Appeal with the California Court of Appeal. Id. at ¶ 33. Though perfecting the
19 appeal apparently automatically stayed enforcement of the $51,020.59 in ordinary costs,
20 Defendant recorded an Abstract of Judgment for the entire $79,117.10 against Plaintiff's
21 home on June 5, 2008. Id. at ¶¶ 34-35, citing Cal. C. Civ. Proc. 917.1(d). Defendant served
22 Plaintiff with an order to appear for a debtor's examination in state court. Id. at ¶ 37.
23 Plaintiff filed a motion to stay enforcement of the full amount of the judgment, after which

---

[3] The court went on to hold that Nazir did not violate the discharge order simply by including allegations of prepetition harassment in his state court complaint, as those acts "may still be admissible to bolster his claim for wrongful discharge." Id. At the motion hearing before this Court, Plaintiff represented that his state court complaint did not explicitly seek redress for prepetition claims. The Court notes that Plaintiff's state court complaint includes incidents from 2001 and mid-2002 (prior to the December 9, 2002 petition) within Plaintiff's cause of action for harassment. See RJN Ex. 1. However, the Court does not make any independent judgment as to this question.

[4] Plaintiff has appealed.

1 the court determined that the undertakings by personal sureties that Plaintiff posted were
2 adequate, combined with Plaintiff's appeal, and ordered the Abstract of Judgment stricken.
3 Id. at ¶ 38. Plaintiff alleges that Defendant knew it had no reasonable basis for attempting to
4 collect the entire $79,117.10 in judgment from Plaintiff. Id. at ¶ 40.

### 3. This Federal Action

Plaintiff asserts that he has exhausted his administrative remedies with the EEOC. Id. at ¶¶ 42-46. He filed this suit in April 2009, alleging that Defendant's post-termination litigation activities in bankruptcy and state court constitute (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination in violation of 42 U.S.C. § 1981; and (4) retaliation in violation of 42 U.S.C. § 1981.[5] Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), and moves for sanctions against Plaintiff's counsel under Federal Rule of Procedure 11.

## DISCUSSION

### 1. Motion to Dismiss

#### A. Legal Standard

"A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the pleadings." Silas v. E*Trade Mortg. Corp., 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). The complaint is to be construed in the light most favorable to the non-moving party and all material allegations in the complaint are take as true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). However, district courts need not accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1996). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d. 979, 988 (9th Cir. 2001).

---

[5] Notably, Plaintiff stated in his Opposition that he "filed the present lawsuit to seek reimbursement for lawyer fees incurred for his Chicago bankruptcy lawyers and for other relief." Opp. at 1.

4

Pursuant to Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record'" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)). "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." Lee, 250 F.3d at 690.

### B.     Noerr-Pennington Doctrine

Defendant asserts that each cause of action in the Complaint should be dismissed because Defendant's conduct was entitled to Noerr-Pennington immunity. Mot. at 7. "The Noerr-Pennington doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). Noerr-Pennington protection applies to citizens' use of the courts. See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56-57 (1993). Though Noerr-Pennington first arose in the antitrust context, it now applies to litigation in all contexts. White, 227 F.3d at 1231.

"Under the Noerr-Pennington rule of statutory construction, [courts] must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." Sosa v. DIRECTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006). Plaintiff has pointed to nothing in either Title VII or Section 1981 proscribing Defendant's post-termination litigation actions at issue here. Nor has Plaintiff disputed Defendant's characterization of its actions as petitioning.

However, Plaintiff argues that Defendant is not entitled to Noerr-Pennington protection because its petitioning activity was a sham. Opp. at 7. The Noerr-Pennington doctrine does not protect petitioning activity that is "ostensibly directed toward influencing governmental action" but is in fact "a mere sham." Eastern R. R. Presidents Conference v.

5

1  Noerr Motor Freight, Inc., 365 U.S. 127, 144 (1961).  The Supreme Court has defined a sham
2  as a "private action that is not genuinely aimed at procuring favorable government action."
3  See Professional Real Estate Investors, 508 U.S. at 58 (internal quotations and citations
4  omitted).

5        The Ninth Circuit recognizes three circumstances in which a defendant's activities
6  might qualify under the sham exception to Noerr-Pennington.  See Kottle v. Northwest
7  Kidney Centers, 146 F.3d 1056, 1060 (9th Cir. 1998).  In the first, where a defendant
8  allegedly brings a "single sham lawsuit," a plaintiff must show that the lawsuit was both
9  objectively baseless and a concealed attempt to interfere with the plaintiff's business
10 relationships.  Id.  In the second, where a defendant allegedly brings "a series of lawsuits," a
11 plaintiff must show that such suits are "brought pursuant to a policy of starting legal
12 proceedings without regard to the merits and for the purpose of injuring a market rival."  Id.
13 In the third, where a defendant allegedly made intentional misrepresentations to the court, a
14 plaintiff must show that the knowing misrepresentation "deprive[d] the litigation of its
15 legitimacy."  Id.

16       The third circumstance is not relevant here; Plaintiff makes no allegation of
17 misrepresentations.  The second circumstance is also not relevant.  Despite Plaintiff's claim
18 that "Defendant pursued three proceedings against [Plaintiff]: a motion seeking contempt and
19 sanctions, a motion to reconsider, and an appeal," Opp. at 8, Plaintiff points to no authority
20 equating three such filings with three distinct "proceedings."

21       Defendant argues that the first Kottle circumstance does not apply either, because its
22 actions were not "objectively baseless." Mot. at 9.  A petition is "objectively baseless" if "no
23 reasonable litigant could realistically expect success on the merits."  See Professional Real
24 Estate Investors, 508 U.S. at 60.  See also White, 227 F.3d at 1231 ("We do not lightly
25 conclude in any Noerr-Pennington case that the litigation in question is objectively baseless,
26 as doing so would leave that action without the ordinary protections afforded by the First
27 Amendment, a result we would reach only with great reluctance.").
28

6

1     The Court takes judicial notice of Defendant's partial success in each bankruptcy
2 order, RJN Ex. 14, 16, and 18, particularly with regard to Plaintiff's pre-petition claims. In
3 light of this success, it is hard to see how Defendant's bankruptcy litigation could be seen as
4 objectively baseless. Cf. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)
5 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party
6 may have an entirely reasonable ground for bringing suit."); and White, 227 F.3d at 1232
7 (noting that a winning lawsuit is not a sham, but also that "[t]he fact that a litigant loses his
8 case does not show that his lawsuit was objectively baseless").

9     Plaintiff argues, however, that even if part of Defendant's motions had merit, other
10 parts could still be objectively baseless. See Opp. at 8, citing Bill Johnson's Restaurants, Inc.
11 v. NLRB, 461 U.S. 731, 749, n.15 (1983), and Theofel v. Farey-Jones, 359 F.3d 1066, 1079
12 (9th Cir. 2004). Those cases are distinguishable: White specifically held that NLRA cases,
13 such as Bill Johnson's, are "treat[ed] differently from all others with respect to the Noerr-
14 Pennington 'sham' exception," 227 F.3d at 1236, and the Ninth Circuit in Theofel, 359 F.3d
15 at 1078-79, expressed skepticism "that Noerr-Pennington applie[d] at all to the type of
16 conduct at issue" there, subpoenas. Even under Plaintiff's reading of the case law, however,
17 the Court finds it was not objectively baseless to bring a motion for contempt and sanctions
18 against Plaintiff. This is particularly so given the bankruptcy court's apparent finding that
19 Plaintiff had violated the discharge injunction, though the court "decline[d] to impose any
20 civil liability." See RJN Ex. 14.

21     Plaintiff argues next that, even if bringing the motion for contempt had merit, once the
22 bankruptcy judge who issued the confirmation order denied the contempt motion, it became
23 objectively baseless for Defendant to move for reconsideration and to appeal to the district
24 court. Opp. at 4. But such is the judicial process: lower court holdings are frequently
25 appealed, and frequently reversed. Particularly given the district court's subsequent order,
26 RJN Ex. 18, which remanded to the bankruptcy court to further consider Defendant's motion

7

1 for sanctions, it was not objectively baseless to appeal the bankruptcy court's order, RJN Ex.
2 14.[6]

3 Accordingly, Defendant's bankruptcy filings were not objectively baseless.

4 Defendant also contends that its having filed an Abstract of Judgment for the entire
5 $79,117.10 in state court costs was not objectively baseless under Kottle. Mot. at 9. Though
6 the state court ultimately ordered the Abstract of Judgment stricken, Cmplt. at ¶ 38,
7 Defendant notes that Cal. C. Civ. Proc. 674 was amended in 1983 to remove a proscription
8 against recording abstracts during a stay on appeal, which would give a litigant cause to
9 believe that it was permitted. Mot. for Sanctions at 8, comparing Calif. Stats. 1982, ch. 497 §
10 39, pp. 2157-58; and Calif. Stats. 1980, ch. 1281 § 2, pp. 4326-27. Plaintiff's response at one
11 point (Plaintiff did not address this issue in its Opposition motions) was that "At the same
12 time that CCP § 674 was amended, a statute now codified as CCP § 697.040" stayed
13 enforcement of a judgment on appeal. Vandall Decl. Ex. B. But that section only applies
14 where enforcement is stayed on appeal "by the giving of a sufficient undertaking," and
15 Defendant filed the Abstract of Judgment before Plaintiff had filed any undertakings. See
16 Mot. for Sanctions at 8. Though Defendant did not prevail in filing its Abstract of Judgment,
17 its filing was at most an error– it was not objectively baseless in light of California law.

18 The Court notes that it reaches the sham exception at this motion to dismiss phase
19 because it finds that Plaintiff's allegations are conclusory, and that the Court is able to
20 conclude based on evidence of which it is permitted to take judicial notice that Defendant's
21 conduct was not a sham.[7] The court therefore need not reach the question of Defendant's

---

23 [6]Plaintiff also could have brought a Rule 11 motion in the Northern District of Illinois if he felt that Defendant's actions were objectively baseless at the time. He did not do so.

25 [7]There is nothing novel about analyzing the sham exception at the motion to dismiss phase. See, e.g., Kottle, 146 F.3d at 1063 (affirming dismissal based on analysis of sham exception, and holding that defendant's conduct was not objectively baseless because defendant prevailed); Sosa, 437 F.3d at 942 (discussing sham exception at length in affirming dismissal); Manistee Town Center v. City of Glendale, 227 F.3d 1090, 1095 (9th Cir. 2000) (finding that conduct did not fall within sham exception and affirming dismissal). Plaintiff's briefing also acknowledged the Court's ability to analyze the sham exception, arguing that "the allegations of the complaint and matters of which judicial notice may properly be taken . . . show [Defendant's] 1-1/2 year battle for contempt and sanctions was objectively baseless." Opp. at 3.

subjective intent (a question which would not appropriately be answered based on judicial notice in this case). See White, 227 F.3d at 1232 ("Because . . . the first requirement cannot be sustained, we need not even consider the second. Objective baselessness is the sine qua non of any claim that a particular lawsuit is not deserving of First Amendment protection."). The Court thus does not reach Plaintiff's myriad allegations as to Defendant's state of mind, including that Defendant knew its bankruptcy court filings were meritless, that Defendant's delay in filing the bankruptcy motion evidences its knowledge that the motion lacked merit, that Defendant knew it had no reasonable basis for filing the Abstract of Judgment, or that Plaintiff was selectively targeting only its Pakistani-American former employees.

Plaintiff has not stated a plausible claim that Defendant's actions in bankruptcy court or in state court were shams. Moreover, the Court finds that Plaintiff could not amend his Complaint to allege additional facts establishing that Defendant's litigation conduct was objectively baseless. Accordingly the Complaint is dismissed with prejudice based on the Noerr-Pennington doctrine. The Court will not reach Defendant's additional arguments for dismissal.

2. Motion for Sanctions

Defendant has also brought a motion for sanctions against Plaintiff's counsel, Phil Horowitz, under Rule 11. Defendant alleges that sanctions are warranted because the Complaint "is not supported by fact or law." Mot. for Sanctions at 2. Sanctions may be awarded when a filed pleading "is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." See Zaldivar v. City of Los Angeles, 780 F.2d 823, 830-31 (9th Cir. 1986), overruled on other grounds. While Plaintiff's federal suit should be dismissed, the Court does not find that it was frivolous, legally unreasonable or without factual foundation. Sanctions are not appropriate.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED with prejudice, and the

//

//

9

1 motion for sanctions is DENIED.

2     **IT IS SO ORDERED.**

5 Dated: September 9, 2009

    CHARLES R. BREYER
    UNITED STATES DISTRICT JUDGE